This bill presents the question, Is McRae the cosurety of Daniel for Lucas or supplemental only? If he is the former Daniel is entitled to relief; if the latter he is not. Cosureties are those *Page 333 
who have assumed the same obligation, equal in all their liabilities; supplemental sureties are those who come in aid of the former. We are not precluded by the nature of the indorsement from examining the transaction as it really is, it affording only prima facie
evidence of the nature and order of the liabilities of the different persons whose names appear upon the note; to prove this, authorities need not be cited. The discussions which daily arise in our courts of justice upon accommodation notes and bills prove sufficiently that the mercantile order of liability is only prima facie evidence, and, in fact, may be even inverted, as was declared in 15 East, 216, where a subsequent indorsee was held liable to a prior indorser (not indeed on the bill), it being shown that it was discounted for his benefit, which fact never could have appeared to the Court if the note and indorsements were conclusive upon the parties. I am at a loss to discover how it could ever have been doubted, for the admission of such evidence contradicts no express written agreement, but repels an implication only. The note in the hands of Daniel created no liability in Lucas, for Daniel had given nothing for it. The same may be said when it was in the hands of McRae, to whom it was delivered by Lucas, the maker, which is evidence that (603) it was made for Lucas's accommodation, and was not an evidence of a debt from Lucas to Daniel; for if so why was it left in the hands of Lucas, the maker? By this fact McRae was informed that the note was made for Lucas's accommodation. To enable him to raise money, he put his name there at Lucas's request and for Lucas's benefit. These are the facts of the case, and from them we will endeavor to ascertain the nature and extent of McRae's engagement. Every indorsement of a note is drawing a bill of exchange. It directs the maker of the note to pay its amount to the indorsee, and if the maker gives value for it, it imposes upon the indorser the obligation, and he, the indorser, should be duly notified thereof. It imposes no obligation on the indorsee to apply to a prior indorser before he calls on a subsequent one, but he may do so if he thinks proper; for each indorser may be considered by him as drawing the bill in his favor, and he is substituted to all their rights; but he is called on to make proof of his endeavors to procure payment from the maker of the note, or acceptor of the bill of exchange only, and due notice thereof to such indorsee as he may think proper to call before the Court. Whether he has applied or given notice to any other indorser is entirely unimportant in that trial. The bank therefore recovered of McRae, regardless of what steps they might have taken against Daniel. Their *Page 334 
obligation was to use due diligence as regarded Lucas. The obligations of Daniel and McRae were precisely the same, equal in every respect to each other. They are therefore cosureties, and the one not supplemental to the other. It is true that an indorsee for value, when he indorses the note or bill over, has all his prior indorsers for his indemnity; and had McRae discounted this note by paying Lucas the money (for it is not necessary that the money should be paid to his indorser; it is sufficient that (604) it is paid to any one at his request) when he afterwards paid the money, and took up the bill from the bank, he would have been remitted to his former situation, and might then have looked to Daniel for an indemnity. The money which McRae paid to the bank was in satisfaction of his promise that he would pay if Lucas did not, and not as a purchaser of the note. That cosureties may be, by different instruments executed at different times, and without communication or mutual understanding to that effect is shown by Deering v. Earl of Wilchelsea, 2 Bos. Pul., 270, andCraythorn v. Sir John Swinburn, 14 Vesey. In the latter case Lord Eldon refused relief, not because the parties were bound by different instruments, but because one surety was supplemental to the other. In which case, also, it is admitted that contribution arises, not upon contract, but upon the principle of equity that equality is equity; that is, that it was originally so, however it may be at present, since adjudications have been made upon the subject because men are presumed to act in reference to the law as expounded.
I think these principles are plainly deducible from the English authorities, although I can find none of them analogous to the present case. Brown v. Maffey, 15 East, 216, may on first view seem to be analogous. But I think it essentially differs. In that case a note was given to the payee to raise money to fulfill some obligation or promise which he was under or then undertook to the maker. The note was then delivered to the payee, and by him indorsed to the plaintiff without consideration, and by the plaintiff indorsed at the request and for the accommodation of the payee. The plaintiff was afterwards compelled to take it up, and he brought an action against the maker. the note, in that case was in possession of the person to whom it was payable, and this by the consent of the maker. The payee was thereby enabled to gain credit and cause others to incur liabilities for him upon the (605) faith of the note; and this by the consent of the defendant, who thereby gave evidence to the world that the payee had its amount in his hands, and that he would pay the same to his indorsee. Not so in the present case. For Lucas, the maker, retained *Page 335 
the note even after Daniel's indorsement, which was the most satisfactory evidence that it was made for his accommodation, and was not evidence of a real debt due from him to Daniel. All the circumstances when taken together speak the truth. There was no danger of imposition. Besides, it appears that the note in the case above referred to was a note for the sole benefit and accommodation of the payee. Another observation might be made on the case. The defendant succeeded in his defense on other grounds, and it was a matter of not much moment how he did so. I admit that Brown v. Mott, 7 Johns., 361, is an authority in point against the complainant. I have examined that case with respect and attention, which is due to everything that comes from that court, and I do not think that the authorities on which it is professedly bottomed support it.
TAYLOR, C. J., dissented.
PER CURIAM. Judgment accordingly.
Cited: Hatcher v. McMorine, 14 N.C. 229; Richards v. Simms, 18 N.C. 49,50, 51; Dawson v. Pettway, 20 N.C. 533; Southerland v. Fremont,107 N.C. 569; Atwater v. Farthing, 118 N.C. 388; Smith v. Carr,128 N.C. 152; Shuford v. Cook, 164 N.C. 50.